UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:03-cr-00024-JAW-1 |
| | ) | |
| THOMAS PAUL BRICHETTO, JR. | ) | |

**ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

The court dismisses without prejudice an incarcerated defendant's motion for compassionate release, concluding the defendant has not established that his medical conditions, unusually long sentence, or "other reasons" amount to an extraordinary and compelling basis for sentence reduction and the 18 U.S.C. § 3553(a) factors counsel against his early release.

## I.    BACKGROUND

### A.    Procedural History

On April 30, 2003, a federal grand jury indicted Thomas Paul Brichetto, Jr. on charges of bank robbery and aiding and abetting bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d) (Count I); using, carrying, and brandishing a firearm during and in relation to the commission of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Count II); and being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count III). *Indictment* (ECF No. 4).  Mr. Brichetto entered a plea of not guilty as to all three counts on May 23, 2003.  *Min. Entry* (ECF No. 8).

On January 5, 2004, at the end of a four-day trial, a federal jury found Mr. Brichetto guilty on Counts I and II and not guilty on Count III.  *Jury Verdict* (ECF

No. 96).  United States District Judge Gene Carter[1] sentenced Mr. Brichetto on May 17, 2004 to a term of incarceration of 300 months on Count I and eighty-four months on Count II, to be served consecutively; five years of supervised release on Counts I and II, to be served concurrently; restitution in the amount of $9,916.67; and a $100 special assessment on each count.  *J.* (ECF No. 119).

Mr. Brichetto timely appealed his conviction and sentence to the United States Court of Appeals for the First Circuit.  *Notice of Appeal* (ECF No. 120).  On February 15, 2005, the First Circuit issued its judgment, interpreting Mr. Brichetto's appeal as a request that he should have been granted a directed verdict or given a new trial because "[t]he jury's verdict of Not Guilty on Count Three cannot be reconciled with the Guilty verdicts on Counts One and Two."  *Op. of USCA* at 2 (ECF No. 130); *see also Mandate of USCA* (ECF No. 131).  Stating "a straightforward claim that the jury verdict is internally inconsistent . . .. is essentially unreviewable," the First Circuit affirmed the district court's judgment after determining Mr. Brichetto's acquittal on Count III did not mean there was insufficient evidence for the guilty verdict on Counts I and II.  *Op. of USCA* at 3-4 (quoting *United States v. Alicea*, 205 F.3d 480, 484 (1st Cir. 2000) (in turn citing, e.g., *United States v. Powell*, 469 U.S. 57, 66 (1984))).  In dismissing his appeal, the Court of Appeals opined "[t]here is more than sufficient evidence in the record . . . to allow a jury to find Brichetto guilty beyond a reasonable doubt on Counts One and Two."  *Id.* at 4.

---

[1]    United States District Judge Gene Carter presided over Mr. Brichetto's jury trial and imposed sentence.  On February 7, 2011, Mr. Brichetto's case was reassigned to United States District Judge George Singal.  On August 12, 2024, Mr. Brichetto's case was reassigned to this Judge.

Following the dismissal of his direct appeal, Mr. Brichetto continued to challenge his sentence and move for a new trial, though his efforts were unsuccessful. *See, e.g., Mot. for a Writ of Error Coram Nobis* (ECF No. 134); *Order Affirming Recommended Decision of the Mag. J.* (ECF No. 142); *Notice of Appeal* (ECF No. 143); *J. of USCA* (ECF No. 149); *Mot. Pursuant to Fed. R. Civ. P. 60(b)(6) or 60(d)(1)* (ECF No. 151); *Order Affirming the Recommended Decision of the Mag. J.* (ECF No. 165); *J. of USCA* (ECF N. 166); *J. of USCA* (ECF No. 167); *App. for Leave to File a Second or Successive Mot. to Vacate, Set Aside or Correct Sentence* (ECF No. 168); *Order Affirming the Recommended Decision of the Mag. J.* (ECF No. 186); *Mot. to Alter or Amend an Order Denying the § 2255 Petition Pursuant to Rul[e] 59(e) of the Fed. Rules of Civ. P.* (ECF No. 187); *Order Denying Mot. for Recons.* (ECF No. 188).

## B.    The Defendant's Pending Motion

On August 12, 2024, the Defendant filed a motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A), claiming that he has medical conditions amounting to an extraordinary and compelling reason for his early release and additionally asserting his "unusually long sentence" warrants early release under the statute's "other reasons" provision. *Mot. for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)* at 4, 14 (ECF No. 190) (*Def.'s Mot.*).[2]  On August 27, 2024, the United

---

[2]    The Clerk of Court simultaneously docketed the same filing as a motion to reduce sentence pursuant to 18 U.S.C. § 3582(c)(2), based on an amendment to the United States Sentencing Guidelines (U.S.S.G.).  *Mot. to Reduce Sentence* (ECF No. 191).  The Court believes this double entry was in error.  While Mr. Brichetto's motion for compassionate release does address an amendment to the Sentencing Guidelines, the Defendant observed that the Sentencing Commission did not make the relevant change retroactive and he thus moved for sentence reduction on this ground pursuant to 1B1.13(b)(6) (addressing "unusually long sentences").  *Def.'s Mot.* at 14 (capitalization and emphasis in original).  The Court, consistent with the Defendant's express wishes, reviews his motion as only a

States Probation Office filed a report determining Mr. Brichetto is ineligible for sentence reduction pursuant to Amendment 821 to the Sentencing Guidelines. *Rep Pursuant to Am. 821 to the United States Sent'g Guidelines for <u>Ineligible</u> Def.* (ECF No. 195) (*USPO Rep.*). The Government opposed Mr. Brichetto's requested sentence reduction on October 1, 2024. *Gov't's Resp. in Opp'n to Mot. for Compassionate Release* (ECF No. 198) (*Gov't's Opp'n*). Mr. Brichetto did not reply.

## II. THE PARTIES' POSITIONS

### A. The Defendant's Motion

After reporting that he satisfied the administrative exhaustion requirement by first sending his request to the Warden of FCI Mendota, the Defendant avers his "unusually long sentence" and "inadequate medical care" each amount to an extraordinary and compelling reason warranting his early release. *Def.'s Mot.* at 2, 14-16. Mr. Brichetto also submits "other reasons" justify his release; specifically, "the failure to address Petitioner's mental health history at sentencing and on appeals[,] the use of acquitted conduct at sentencing by using count three . . . to enhance as a career offender." *Id.* at 5.

First addressing his long sentence, which the Court construes as a request for compassionate release pursuant to U.S.S.G. § 1B1.13(b)(6), Mr. Brichetto argues that "changes the Sentencing Commission made to the guidelines, but did not make retroactive[,] would entitle [him] to have the Career Offender enhancement removed"

---

motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) and does not additionally address whether the same filing also presents grounds for relief pursuant to § 3582(c)(2).

because "[his] priors are no longer considered predicates for enhancement." *Id.* at 14. He reports that, at the time of his filing, he had served twenty-one years and seventy-two days, such that the removal of the Career Offender enhancement would result in his "immediate release" because "[w]ithout the enhancement [he] would have a 'mandatory guideline range' of 120-150[ ][months] . . .. [p]lus add a consecutive 84[ ][months] for count two . . . which would then amount to 17-19½ years[,] [w]ell below what Petitioner has already served." *Id.* He asks the Court to consider this request pursuant to 18 U.S.C. § 3582(c)(1)(A) because "a NON Retroactive amendment to the sentencing guidelines now constitutes an extraordinary and compelling reason for compassionate release." *Id.* (Defendant's emphasis).

The Court construes the Defendant's second asserted basis to establish an extraordinary and compelling reason for compassionate release pursuant to U.S.S.G. § 1B1.13(b)(1) as his claims concern his medical conditions and treatment while in federal custody. Mr. Brichetto asserts that he is receiving "inadequate medical care" at FCI Mendota, which "does not have a qualified medical employee to draw blood from inmates who require lab work and screenings." *Id.* at 14. Mr. Brichetto says he "has been waiting a year to have chronic care issues evaluated and updated through blood work." *Id.* In addition, he says that he "has respiratory issues and requires a CPAP machine to aid in sleep," and posits "[m]any courts have ruled that a Petitioner's pre-existing health conditions in combination with the increased risk of Covid-19 in prisons constitute 'extraordinary and compelling reasons' for relief[,] [e]specially respiratory conditions." *Id.* He contends further that "[m]any courts have

granted compassionate release to individuals with sleep apnea because it places them at risk for serious complications," and informs the Court that he "is currently housed at a facility (FCI Mendota) with a high chance to catch coccidio[i]domycosis ([V]alley [F]ever)." *Id.* at 15.

He informs the Court that, if his motion is granted, he plans to live with his brother in Hollis, Maine, and that he has obtained employment with Primary Electric in Portland, Maine and will use this job to support himself and pay his living expenses and healthcare bills. *Id.*

### B.    The Government's Opposition

The Government opposes Mr. Brichetto's motion, contending he has not shown extraordinary and compelling reasons warranting early release, the section 3553(a) factors do not lean in his favor, and he poses a danger to the community. *Gov't's Opp'n* at 1.

The Government reports that Mr. Brichetto has served approximately 256 months (sixty-six percent) of his 384-month sentence and his projected release date is June 11, 2032. *Id.* at 9. According to Mr. Brichetto's inmate records attached by the Government, he is "listed as being Care Level 1 in both mental health and physical health, meaning that he is healthy and has limited medical needs." *Id.* (citing *id.*, Attach. 3, *Inmate Profile*).

### 1.    Administrative Exhaustion

The Government acknowledges that Mr. Brichetto requested early release from the Warden before making the same request of the Court but disputes that he

raised identical reasons in both petitions.  *Id.* at 9-10.  Specifically, the Government contends that Mr. Brichetto "has not exhausted his administrative remedies with respect to the 'other' arguments in his Motion . . .. includ[ing] the alleged failure of the Court to address [his] mental health history at sentencing and on appeal, as well as the use of acquitted conduct at sentencing."  *Id.* at 10 (citing *Def.'s Mot.* at 5).  Thus, the Government argues he has not exhausted his administrative remedies "with respect to these issues."  *Id.* (citing *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021)).

## 2.    Extraordinary and Compelling Reasons

If the Court determines Mr. Brichetto satisfied the administrative exhaustion requirement, the Government argues the Court should nonetheless dismiss his motion on the merits because he has failed to show an extraordinary and compelling reason for his release.  *Id.*

### a.    Unusually Long Sentence

The Government construes Mr. Brichetto's first asserted extraordinary and compelling reason as brought pursuant to U.S.S.G. § 1B1.13(b)(6), which the Sentencing Commission added to the Guidelines effective November 1, 2023.  *Id.* at 11.  That provision states, in relevant part:

> Unusually Long Sentence.—If the defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed

at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

*Id.* (quoting U.S.S.G. § 1B1.13(b)(6)).

### i.    Facial Challenge

First, the Government brings a facial challenge against this amendment to the Sentencing Guidelines, arguing "the Sentencing Commission exceeded its statutory authority by adopting the new provision in subsection (b)(6)." *Id.* Maintaining that "[t]he Sentencing Commission's authority to 'describe what should be considered extraordinary and compelling reasons,' 28 U.S.C. § 994(t), is necessarily limited by Congress's clear directive that any such reasons be both 'extraordinary and compelling,' 18 U.S.C. § 3582(c)(1)(A)," the Government insists that "[n]o reasonable interpretation of ["extraordinary and compelling"] can encompass a nonretroactive or intervening change in the law; *every* lawfully imposed sentence reflects the law at the time of sentencing, and any disparity caused by a change in sentencing law—whether by statute or an intervening judicial decision—merely reflects the operation of ordinary nonretroactivity principles and the ordinary process of the legal system." *Id.* at 11-12 (Government's emphasis). "Congress explicitly addressed the retroactive application of *some* changes in law," the Government says and alleges "[t]hat Congress did not similarly provide the Commission or district courts with authority to revisit sentences in light of statutory amendments or changes in decisional law suggests that Congress did not intend for Section 3582(c)(1)(A) to reach such changes." *Id.* at 12 (citing 18 U.S.C. § 3582(c)(2)) (Government's emphasis).

Further, the Government cautions that authorizing individual district courts to recognize intervening changes in the law as extraordinary and compelling circumstances "will produce the very sort of unwarranted sentencing disparities that the Sentencing Reform Act of 1984 was designed to eliminate." *Id.* at 12-13. In a footnote, the Government reports that the Sentencing Commission "was divided 4-3 on whether to promulgate the November 1, 2023 amendments to Section 1B1.13," and emphasizes that "the dissenting Commissioners shared their view that the policy statement 'goes further than the Commission's legal authority extends.'" *Id.* at 12 n.8 (quoting U.S.S.C., April 2023 Public Meeting Tr. at 60, https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230405/20230405_transcript.pdf) (citation corrected).

The Government argues that "the majority of courts of appeals" to have considered this question have concluded that changes in law do not amount to an "extraordinary and compelling" basis for sentence reduction, either alone or in a combination with other factors. *Id.* at 13 (citing *United States v. Andrews*, 12 F.4th 255, 261 (3rd Cir. 2021); *United States v. McCall*, 56 F.4th 1048, 1050 (6th Cir. 2022); *United States v. Thacker*, 4 F.4th 569, 571 (7th Cir. 2021); *United States v. Crandall*, 25 F.4th 582, 585-86 (8th Cir. 2022); *United States v. Jenkins*, 50 F.4th 1185, 1198-200 (D.C. Cir. 2022); *United States v. McMaryion*, No. 21-50450, 2023 U.S. App. LEXIS 15712, at *3 (5th Cir. June 22, 2023) (citation amended)). Acknowledging that the First Circuit's decision in *United States v. Trenkler*, 47 F.4th 42, 47-48 (1st Cir. 2022) "will likely influence this Court's interpretation and application of subsection

(b)(6) to this case," the Government brings this facial challenge "in order to preserve the issue for further review." *Id.* at 13-14.

## ii. As-Applied Challenge

The Government alternatively argues the Defendant cannot establish § 1B1.13(b)(6) applies in his case despite having served at least ten years of his sentence because "the change in the law that he relies upon is a non-retroactive amendment to the Guidelines Manual, which is explicitly excluded as a change in the law to which subsection (b)(6) can apply." *Id.* at 14 (discussing U.S.S.G. § 1B1.13(b)(6)). The Government interprets Mr. Brichetto's argument that he would not be sentenced as a career offender today because his "priors are no longer considered predicates for the [career offender] enhancement," *id.* (quoting *Def.'s Mot.* at 14), to reference Amendment 798, which the Sentencing Commission adopted in 2016 to change the enumerated offenses that qualified as career offender predicates pursuant to U.S.S.G. § 4B1.2. *Id.* at 14-15. As relevant to Mr. Brichetto's case, the Government concedes Amendment 798 removed as enumerated offenses "burglary of a dwelling" and convictions that "otherwise involve[] conduct that presents a serious potential risk of physical injury to another." *Id.* at 15. However, the Government argues it is dispositive that the Sentencing Commission declined to make Amendment 798 retroactive, and thus Mr. Brichetto falls outside the scope of § 1B1.13(b)(6). *Id.*

b.    **Medical Issues**

i.    **Exposure to An Infectious Disease or Ongoing Public Health Emergency**

Responding to Mr. Brichetto's argument that his diagnosis of sleep apnea places him at "high risk" of serious complications for contracting COVID-19 and Valley Fever, the Government construes this argument as brought pursuant to U.S.S.G. § 1B1.13(b)(1)(D) and argues the Defendant's circumstances do not rise to the standard of a "extraordinary and compelling" reason under the law. *Id.* at 16.

aa.    **COVID-19**

The Government acknowledges that Mr. Brichetto was diagnosed with sleep apnea in October 2020 and that he requires a CPAP machine, which BOP has provided, to assist with his sleep, but asserts that "even with these diagnoses, BOP has designated Brichetto as Care Level-1 . . ., meaning that he is healthy and has limited medical needs." *Id.* (citing *id.*, Attach. 5, *2024 Med. Recs.* at 5, 8-9; *Inmate Profile*).  Courts denied motions for compassionate release brought by inmates with sleep apnea during the COVID-19 pandemic, the Government says, on the basis of the Centers for Disease Control and Prevention's (CDC) determination that sleep apnea does not create a greater risk of severe illness from COVID-19.  *Id.* (citing *United States v. Sylvester*, Nos. 2:17-cr-52-DBH-03, 1:17-cr-94-DBH, 2021 U.S. Dist. LEXIS 25535, at *4 (D. Me. Feb. 10, 2021) (citation amended) (in turn collecting cases from other federal district courts in the First Circuit)).

Even if sleep apnea did exacerbate the risk of severe illness from COVID-19, the Government insists the pandemic "no longer constitutes the emergency that it

11

once did," *id.* at 18 (quoting *United States v. Park*, Cr. No. 20-10128-MLW, 2023 U.S. Dist. LEXIS 98553, at *2 (D. Mass. June 5, 2023) (citation amended; pincite added)), and there is no significant ongoing outbreak of COVID-19 at the facility where Mr. Brichetto is incarcerated, noting FCI Mendota had two open COVID-19 cases at the time of the Government's filing.    *Id.* (citing BOP, Inmate COVID-19 Data, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp).

### bb.    Valley Fever

The Government urges the Court not to credit Mr. Brichetto's arguments regarding Valley Fever as "extraordinary and compelling" justification for his requested release, arguing (1) his sleep apnea does not place him at an increased risk of severe medical complications or death from the disease; (2) Valley Fever, a fungal infection that can develop from breathing contaminated soil and dust, typically resolves itself within a few months without treatment, although healthcare providers can prescribe antifungal medication if necessary; (3) Valley Fever is not contagious; (4) Valley Fever is not the subject of an ongoing public health emergency; and (5) Mr. Brichetto has not shown that his "personal health risk factors and custodial status" place him at an increased risk of suffering severe medical complications or death from the infection because he has not alleged he falls within one of the groups identified by the CDC as at a higher risk, such as people of Filipino and African heritage, pregnant women, people with diabetes, people with weakened immune systems due to an AIDS diagnosis or an organ transplant, and people over sixty years of age.    *Id.* at    18-20    (citing    CDC,    About    Valley    Fever,    https://www.cdc.gov/valley-

fever/about/?CDC_AAref_Val=https://www.cdc.gov/fungal/diseases/coccidioidomycosi
s/causes.html; CDC, Treatment of Valley Fever, https://www.cdc.gov/valley-
fever/treatment/?CDC_AAref_Val=https://www.cdc.gov/fungal/diseases/coccidioidom
ycosis/treatment.html; CDC, Reducing Risk for Valley Fever,
https://www.cdc.gov/valley-fever/prevention/index.html; Mayo Clinic, Valley Fever,
https://www.mayoclinic.org/diseases-conditions/valley-fever/symptoms-causes/syc-
20378761). The Government submits that it "has not identified a single case finding
that *potential exposure* to Valley Fever justifies compassionate release." *Id.* at 19
n.17 (collecting cases in which other federal courts denied motions for compassionate
release from inmates diagnosed with Valley Fever) (emphasis in Gov't mem.).

At bottom, the Government urges the Court to deny Mr. Brichetto's claim of
entitlement to sentence reduction on this ground.

### ii.      Inadequate Medical Care

The Government contends Mr. Brichetto is not entitled to early release
pursuant to U.S.S.G. § 1B1.13(b)(1)(C) based on his argument that he is receiving
inadequate medical care because he has been waiting a year to have "chronic care
issues evaluated and updated through blood work." *Id.* at 20 (quoting *Def.'s Mot.* at
14). Upon review of the Defendant's medical records, the Government notes that his
current diagnoses are hyperlipidemia (high cholesterol), for which he is prescribed
Atorvastatin and Fenobirate; sleep apnea, for which the BOP has supplied a CPAP
machine; a knee cartilage issues treated with acetaminophen, "other specified
symptoms and signs involving the circulatory and respiratory systems," and

"abnormal findings of blood chemistry." *Id.* at 21 (quoting *2024 Med. Recs.* at 1, 3, 7, 9-13; *id.*, Attach. 4, *2023 Med. Recs.* at 1-2, 14-16).

In short, the Government says, the Defendant's medical records show that he is receiving treatment for all conditions and there is no indication any of the conditions require long-term or specialized care which the BOP is failing or unable to provide, such that compassionate release on the basis of purportedly inadequate medical care is unwarranted. *Id.* at 21 (collecting cases). On Mr. Brichetto's specific claim regarding delayed blood tests, the Government says his medical records document that blood tests were conducted in October of 2023 and July of 2024, including for hyperlipidemia. *Id.* at 22 (citing *2024 Med. Recs.* at 14; *2023 Med. Recs.* at 17-18).

### c.    Other Reasons

The Government next responds to the Defendant's "other reasons," which include (1) the Court's alleged failure to address Mr. Brichetto's mental health history at sentencing and on appeal and (2) the consideration of acquitted conduct at sentencing. Beginning with Mr. Brichetto's assertions regarding the courts' failures to consider his mental health history, the Government says, first, that the Court at sentencing noted that it had "carefully considered the contents of the written [revised] presentence investigation report [(PSR])," which detailed the Defendant's mental and emotional health, including his history of suicide attempts, depression, other diagnoses, and hospitalization, *id.* at 23 (citing *U.S. Probation 821 Reduction Rep.*, Attach. 1, *Presentence Investigation Rep.* ¶ 50 (ECF No. 195) (*PSR*) (citation

14

amended)), and, second, that even if the Court had not considered the Defendant's mental health history at sentencing, this type of argument does not provide grounds for compassionate release. *Id.* at 24. "While district courts in the First Circuit 'may conduct a holistic review to determine whether the individualized circumstances [of the defendant]' are extraordinary and compelling, including alleged sentencing errors, 'classic post-conviction arguments, without more,' generally will not succeed." *Id.* (quoting *Trenkler*, 47 F.4th at 47-48; citing *United States v. Sans*, No. 2:12-cr-00030-GZS, 2023 U.S. Dist. LEXIS 84951, at *6 (D. Me. May 16, 2023) (relying on *Trenkler* to deny compassionate release where inmate alleged ineffective assistance of counsel and that he would no longer be sentenced as a career offender) (citation amended)).

On the Defendant's second "other reason" regarding improper consideration of acquitted conduct, the Government says, first, that the sentencing transcript does not support Mr. Brichetto's assertion that the Court considered acquitted conduct at sentencing and shows the Court did not reference Count III "at all," and, second, that even if the Court had considered such conduct, it would not justify compassionate release because "[a] sentencing court may consider acquitted conduct in determining a sentence, as long as that conduct is proven by a preponderance of the evidence." *Id.* at 24-25 (citing *United States v. Watts*, 519 U.S. 148, 157 (1997)) (collecting cases). The Government acknowledges that the Sentencing Commission has proposed an acquitted conduct amendment to the Sentencing Guidelines, which would largely eliminate the consideration of such conduct at sentencing but notes the contemplated

amendment has not been finalized and will not be made retroactive if passed, such that it has no effect on Mr. Brichetto's case. *Id.* at 15 (citing U.S.S.C., Tr. of Aug. 2024 Public Meeting of the U.S. Sent'g Commission at 9-10, https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20240808/transcript.pdf) (citation corrected).

In sum, the Government argues Mr. Brichetto has shown no extraordinary and compelling reason for his early release.

### 3.    Danger to the Community and Section 3553(a) Factors

Insisting Mr. Brichetto remains a danger to the community, the Government reminds the Court that he "committed armed bank robbery, a dangerous crime that had a significant impact on the victims, and he had an extensive criminal history." *Id.* at 26. Further, the Government reports that the Defendant has received twelve infractions during his incarceration and designated a medium risk for recidivism. *Id.* at 26-27 (citing *id.*, Attach. 6, *Discipline Data*; *Inmate Profile* (*Discipline Data*)) (collecting cases).

The Government next turns to the section 3553(a) factors, contending application of the factors to Mr. Brichetto disfavors a grant of sentence reduction. The Government argues Mr. Brichetto is incarcerated for a serious crime, pointing out the Court described the offense at sentencing as "severely egregious" and "posing inordinate and unjustifiable risk to the public safety." *Id.* at 27-28 (quoting *Sent'g Tr.* at 35 (ECF No. 123)). Mr. Brichetto was a "principal actor in the offense conduct," and the Court at sentencing took care to impose a sentence that would "afford a

16

sufficient opportunity for the defendant to accomplish, to the extent that may be, his rehabilitation." *Id.* at 28 (quoting *Sent'g Tr.* at 38).

Mr. Brichetto has served only sixty-six percent of his sentence, the Government says, such that sentence reduction would not adequately account for the nature and circumstances of his offense or his history and characteristics, promote respect for the law, provide deterrence, or yield just punishment. *Id.*

Based on the foregoing, the Government urges the Court to dismiss Mr. Brichetto's motion for compassionate release.

## III.   ANALYSIS

### A.   Administrative Exhaustion

#### 1.   Legal Standard

In 18 U.S.C. § 3582(c)(1)(A), Congress plainly laid out the requirements for a defendant to file a motion for sentence reduction directly with the court, providing that a court may only modify a term of imprisonment where:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . ..

18 U.S.C. § 3582(c)(1)(A); *see also United States v. Quirós-Morales*, 83 F.4th 79, 84 (1st Cir. 2023) ("a prisoner-initiated motion for compassionate release may be made only after the prisoner has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on his behalf or after thirty days have elapsed from the relevant facility's receipt of such request").

17

This Court has previously held that "[s]uccessive compassionate release motions must independently satisfy the exhaustion requirement." *United States v. Cain*, No. 1:16-cr-00103-JAW, 2021 U.S. Dist. LEXIS 20672, at *10-11 (D. Me. Feb. 3, 2021) (collecting cases). As this Court explained in *Cain*: "[e]ven though [the defendant] made a similar request for release [months before], these factors may well have changed in the ensuing months and the statute contemplates that the Warden be given an opportunity to make an internal assessment based on then current conditions." *Id.* at *12-13. While motion-specific exhaustion is required, issue-specific exhaustion remains unresolved in this circuit. *See United States v. Texeira-Nieves*, 23 F.4th 48, 53 (1st Cir. 2022) ("The question of whether and to what extent issue exhaustion applies to judicial review of compassionate-release motions is freighted with uncertainty—but we need not resolve that question today"); *accord United States v. Waite*, No. 2:18-cr-00113-GZS, 2022 U.S. Dist. LEXIS 133073, at *5 (D. Me. Jul. 27, 2022) ("The question of whether 'issue exhaustion' applies in the context of compassionate release remains an open question in the First Circuit").

Other circuit courts of appeal have split on this issue. For example, the Seventh Circuit ruled in 2021 that to proceed with a motion for compassionate release in a district court, a defendant "is required to present the same or similar ground for compassionate release in a request to the [BOP] as in a motion to the court." *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021); *accord United States v. Gieswein*, 832 Fed. Appx. 576, 578 (10th Cir. 2021). Other circuit courts have declined to impose such a requirement, holding that §

3582(c)(1)(A) does not require issue exhaustion and the Supreme Court has not yet addressed the issue and concluded otherwise. *See, e.g., United States v. Ferguson*, 55 F.4th 262 (4th Cir. 2022) (holding the "[d]istrict court erred when it concluded that it could not consider defendant's non-medical arguments with respect to his motion for compassionate release due because he did not raise them in request for compassionate release made to [BOP] because 18 U.S.C. § 3582(c)(1)(A) did not require issue exhaustion"), *cert. denied*, 144 S. Ct. 1007 (2024).

### 2. Discussion

The Government argues Mr. Brichetto's motion fails to satisfy the administrative exhaustion requirement because it raises a ground for early release that the Defendant had not previously presented to the Warden. As an initial matter, the Court agrees with the Government that Mr. Brichetto's motion asserts an extraordinary and compelling reason pursuant to U.S.S.G. § 1B1.13(b)(5) which the Defendant did not first bring to the Warden's attention. *Compare Def.'s Mot.* at 14 (recounting medical issues, his unusually long sentence, and "other reasons") *with Gov't's Opp'n*, Attach. 1, *Inmate Req.to Staff* at 2 (raising medical issues and his unusually long sentence).

As explained above, the First Circuit has not resolved whether a defendant should be barred from proceeding with a motion for compassionate release if he failed to raise with the BOP the same issues he is presenting directly to the district court. *Waite*, 2022 U.S. Dist. LEXIS 133073, at *5 ("The question of whether 'issue exhaustion' applies in the context of compassionate release remains an open question

in the First Circuit"). In the absence of First Circuit authority, the Court adopts the more cautious and commonsensical approach of reaching the merits of Mr. Brichetto's motion for compassionate release, despite his failure to raise before the Warden each of the issues now before the Court.

If the Court declines to address the merits of the issues Mr. Brichetto failed to raise with the Warden and the First Circuit concludes that issue exhaustion is not required, the First Circuit would likely have to remand Mr. Brichetto's petition to this Court to decide the merits of the issues the Court did not reach. By contrast, if the Court reaches the merits of those issues not raised before the Warden and the First Circuit adopts the stricter view of issue preclusion, the First Circuit could deem this Court's analysis of the unraised issues to be superfluous, thereby not requiring a remand. Finally, if the Court reaches the merits of the unraised issues and the First Circuit concludes that issue exhaustion is not required, the First Circuit will then be able to assess this Court's determination of all Mr. Brichetto's issues based on a complete record and order. Thus, from a purely practical view, it seems wiser to reach the merits of all Mr. Brichetto's issues—those raised before the Warden and those not—and leave for the First Circuit the resolution of whether issue exhaustion applies in this Circuit to claims for compassionate release. *Accord United States v. Doe*, No. 1:17-cr-00091-JAW-1, 2024 U.S. Dist. LEXIS 205398, at *20-21 (D. Me. Nov. 12, 2024) (addressing merits of the defendant's claim even though his compassionate release claim would have been barred if issue exhaustion applied in the First Circuit).

In addition, the Court's decision comports with the directive of the First Circuit, which has indicated its preference for declining to dismiss claims based on technicalities rather than on the merits. *See Kuehl v. FDIC*, 8 F.3d 905, 908 (1st Cir. 1994) ("Our federal rules promote the disposition of claims on the merits rather than on the basis of technicalities, and courts should be reluctant to impose a dismissal with prejudice for a rules violation that is neither persistent nor vexatious, particularly without some review of the merits") (citing *Foman v. Davis*, 371 U.S. 178, 181-182 (1962)).

### B.    Merits

#### 1.    Legal Standard

The First Circuit has characterized 18 U.S.C. § 3582(c)(1)(A) as "carv[ing] out a narrow exception to the general rule that '[a] court may not modify a term of imprisonment once it has been imposed.'"  *Quirós-Morales*, 83 F.4th at 84 (quoting *United States v. Saccoccia*, 10 F.4th 1, 3 (1st Cir. 2021)).  The statute allows district courts to grant a request for sentence reduction if three conditions are met: "extraordinary and compelling reasons warrant a sentence reduction, such a reduction is consistent with any applicable policy statements issued by the Sentencing Commission, and consideration of the 18 U.S.C. § 3553(a) factors counsels in favor of a reduction."  *Id.* (citing 18 U.S.C. § 3582(c)(1)(A)(i)).

In 2023, the United States Sentencing Commission clarified the meaning of "extraordinary and compelling circumstances" within 18 U.S.C. § 3582(c)(1)(A) by promulgating Amendment 814.  *See U.S. Sent'g Comm'n, Guidelines Manual*, App. C

Supp., amend. 814.   The Sentencing Commission issued an accompanying policy statement providing further guidance on the six categories of extraordinary and compelling bases warranting a sentence reduction:   the defendant's 1) "medical circumstances", 2) "age", and 3) "family circumstances"; 4) if the defendant was the "victim of abuse" while in custody; 5) "other reasons" similar in gravity as those articulated in (1)-(4); and 6) if the defendant received an "unusually long sentence." U.S.S.G. § 1B1.13(b).

In addition to extraordinary and compelling reasons, a defendant requesting a reduced sentence must demonstrate a reduction would comport with the factors described in 18 U.S.C. § 3553(a).   *Saccoccia*, 10 F.4th at 3.   This statutory section provides that the Court must consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a).

## 2.    Discussion

### a.    Extraordinary and Compelling Reasons

Mr. Brichetto advances four reasons as an extraordinary and compelling basis for his requested sentence reduction; the Court considers each.

#### i.    Unusually Long Sentence

U.S.S.G. § 1B1.13(b)(6), which the Sentencing Commission added to the Guidelines effective November 1, 2023, states:

> Unusually Long Sentence.—If the defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6).

As of the date of this order, Mr. Brichetto has served approximately 260 months of his 384-month sentence and, thus satisfies the requirement that the defendant requesting relief "has served at least 10 years of the term of imprisonment." *See id.*; *Gov't's Opp'n* at 9. Mr. Brichetto argues that an intervening change in the law, namely, "changes the Sentencing Commission made to the guidelines, but did not make retroactive[,] would entitle [him] to have the Career Offender enhancement removed" because "[his] priors are no longer considered predicates for enhancement." *Def.'s Mot.* at 14. The Court, like the Government in its opposition, presumes this argument refers to Amendment 798, which revised the

United States Sentencing Guidelines in 2016 to narrow the types of prior crimes that count toward a defendant's career offender status. U.S.S.G. App. C, amend. 798 (Supp. Nov. 1, 2016).

However, Mr. Brichetto is not eligible for a reduction pursuant to section 1B1.13(b)(6) for a reason he himself admits: Amendment 798 does not apply retroactively. In *Razo v. United States*, No. 1:11-cr-00184-JAW-1, 2023 U.S. Dist. LEXIS 229016 (D. Me. Dec. 26, 2023), this Court said:

> In 2017, the First Circuit held that Amendment 798, which relaxed the range of offenses subject to career offender status, was not retroactive, and observed that "sentencing courts are not mandated to take into consideration non-retroactive substantive amendments to the Guidelines." *United States v. Wurie*, 867 F.3d 28, 35, 37 (1st Cir. 2017). Thus, Mr. Razo's career offender argument fails from the start because under First Circuit law, Amendment 798 does not apply to him since it was not in effect when he was sentenced.

*Id.* at *6. The Court concludes this reasoning is equally applicable here and dismisses the Defendant's request pursuant to § 1B1.13(b)(6). Simply put, under U.S.S.G. § 1B1.10, a court may not reduce a defendant's term of incarceration if the amendment "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B). As Amendment 798 does not apply retroactively to Mr. Brichetto, his Guidelines range is not affected and thus the Court is not authorized to reduce his sentence on this basis. *See Razo*, 2023 U.S. Dist. LEXIS 229016, at *6 ("As this Court owes allegiance to the rulings of the Court of Appeals for the First Circuit, the Court must obey the First Circuit's rulings on issues of law under the

doctrine of stare decisis") (citing, e.g., *United States v. Moore-Bush*, 963 F.3d 29, 36 (1st Cir. 2020)).[3]

While the Court has concluded that Mr. Brichetto has not stated an extraordinary and compelling reason pursuant to § 1B1.13(b)(6), and thus agrees with the Government's as-applied challenge, it takes an additional moment to address the Government's facial challenge to this provision of the Sentencing Guidelines. This Court sits within the First Circuit and is bound by First Circuit precedent. When faced with a similar question, the First Circuit in *Trenkler* stated that "the only exception to what may constitute an extraordinary and compelling reason, as made explicit by Congress, is rehabilitation." *Trenkler*, 47 F.4th at 47 (citing *United States v. Ruvalcaba*, 26 F.4th 14, 25 (1st Cir. 2022)). The *Trenkler* Court further quoted *Ruvalcaba*:

> It follows that a district court adjudicating [a prisoner-initiated motion for compassionate release] may consider the FSA's non-retroactive amendments to the scope of the mandatory minimum penalties under section 841(b)(1)(A) on a case-by-case basis grounded in a defendant's individualized circumstances to find an extraordinary and compelling reason warranting compassionate release.

*Id.* (quoting *Ruvalcaba*, 26 F.4th at 28). Although pressed by the government in that case to reconsider *Ruvalcaba*'s holding regarding the consideration of non-retroactive

---

[3]    The United States Probation Office's report on Mr. Brichetto's compassionate release motion additionally construed his request as based to Amendment 821 to the Sentencing Guidelines, which became effective in November 2023. *USPO Rep.* at 3. The Sentencing Commission determined that Amendment 821 applies retroactively. *Id.* However, Probation's report notes, first, that "the defendant did not argue in his materials for a reduction pursuant to Amendment 821," and, second, that the Defendant is ineligible for such a reduction because he did not receive two status points at sentencing pursuant to then-U.S.S.G. § 4A1.1(d) and did not have zero criminal history points, making him ineligible pursuant to U.S.S.G. § 1B1.10(a)(2)(A). *Id.* at 1-3. Given that the Defendant did not raise this ground for relief, and Probation correctly determined he plainly has no avenue to relief on this basis, the Court ends its discussion of Amendment 821 here.

amendments in ruling on a motion for compassionate release, the *Trenkler* Court did not disturb its holding in *Ruvalcaba*. *Id.* at 48 ("The initial question of what may be *considered* in an 'extraordinary and compelling' determination by the district court is separate from the secondary, individualized question of what can actually *qualify* as extraordinary and compelling. And while the government would like it to be, the initial question is not at issue in this case") (emphasis in original).

In permitting district courts to consider non-retroactive amendments, U.S.S.G. § 1B1.13(b)(6) does not run afoul of the narrow limitation recognized by the First Circuit. *Trenkler*, 47 F.4th at 47 ("the only exception to what may constitute an extraordinary and compelling reason, as made explicit by Congress, is rehabilitation"). Thus, consistent with this binding precedent, the Court rejects the Government's facial challenge to section 1B1.13(b)(6).

### ii.    Exposure to An Infectious Disease or Ongoing Public Health Emergency

Mr. Brichetto also argues his sleep apnea places him at risk for "serious complications" from COVID-19 and Valley Fever, *Def.'s Mot.* at 14-15, thus amounting to an extraordinary and compelling reason under U.S.S.G. § 1B1.13(b)(1)(D). This section of the Sentencing Guidelines states:

The defendant presents the following circumstances—

(i)    the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak or infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii)    due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as

a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii)     such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(D).

The Court agrees with the Government that the Defendant has not stated a colorable claim under this provision of the Sentencing Guidelines.  Although there are multiple issues with Mr. Brichetto's claims regarding sleep apnea, Valley Fever, and COVID-19, the dispositive flaw is that Mr. Brichetto has not plausibly argued that he "is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak or infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority" as required by the Guidelines.  U.S.S.G. § 1B1.13(b)(1)(D)(i).

First, district courts in this circuit have stated that COVID-19 "no longer constitutes the emergency that it once did."  *Park*, 2023 U.S. Dist. LEXIS 98553, at *2; *see also United States v. Burke*, 2024 U.S. Dist. LEXIS 55642, at *5-6 (D.N.H. Mar. 26, 2024) ("The serious risk that COVID-19 posed to inmates has abated with the availability of vaccines and boosters and the end of the pandemic"); *United States v. French*, No. 1:12-cr-00160-JAW-1, 2022 U.S. Dist. LEXIS 225634, at *4-5 (D. Me. Dec. 15, 2022) (same).  FCI Mendota, the facility in California where Mr. Brichetto is presently incarcerated, has two open COVID-19 cases as of a January 21, 2025 update.      BOP,      Inmate      COVID-19      Data, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (accessed Feb. 11, 2025).  Thus, COVID-19 at the facility does not qualify as either "an ongoing outbreak

or infectious disease" or "an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i).

Second, Mr. Brichetto's claim that his concern of potential exposure to Valley Fever is an extraordinary and compelling reason fails for the same reason: he has not shown Valley Fever to be "an ongoing outbreak or infectious disease" or "an ongoing public health emergency declared by the appropriate federal, state, or local authority." U.S.S.G. § 1B1.13(b)(1)(D)(i). The CDC's website acknowledges that Valley Fever "lives in soil in some areas of the southwestern U.S.," CDC, About Valley Fever, [https://www.cdc.gov/valley-fever/about/?CDC_AAref_Val=https://www.cdc.gov/fungal/diseases/coccidioidomycosis/causes.html](https://www.cdc.gov/valley-fever/about/?CDC_AAref_Val=https://www.cdc.gov/fungal/diseases/coccidioidomycosis/causes.html) (accessed Feb. 11, 2025), and Mr. Brichetto is currently incarcerated in this general region of the country at FCI Mendota. However, Mr. Brichetto has not presented evidence to support the conclusion that Valley Fever is an "ongoing outbreak or infectious disease" at FCI Mendota, and the Court is aware of none.

Mr. Brichetto's claim to an extraordinary and compelling reason pursuant to § 1B1.13(b)(1)(D) is unsupported by the record in this case.

### iii.    Inadequate Medical Care

Mr. Brichetto also asserts his entitlement to early release pursuant to U.S.S.G. § 1B1.13(b)(1)(C) by claiming that he is receiving inadequate medical care because he has been waiting a year to have "chronic care issues evaluated and updated through blood work." *Def.'s Mot.* at 14. The Government, upon reviewing Mr. Brichetto's medical records, responds that his current diagnoses of hyperlipidemia (high

cholesterol), sleep apnea, a knee cartilage issue treated with acetaminophen, "other specified symptoms and signs involving the circulatory and respiratory systems," and "abnormal findings of blood chemistry" do not qualify as "medical condition[s] that require[] long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." *Gov't's Opp'n* at 20 (citing *2024 Med. Recs.* at 1, 3, 7, 9-13; *2023 Med. Recs.* at 1-2, 14-16); U.S.S.G. § 1B1.13(b)(1)(C).

The Court again agrees with the Government. First, Mr. Brichetto has not shown that any of his medical conditions "require long-term or specialized medical care." U.S.S.G. § 1B1.13(b)(1)(C). His knee cartilage issue is treated with acetaminophen, an over-the-counter drug; his sleep apnea is supported by a CPAP machine, which BOP has provided; he is prescribed Atorvastatin and Fenobirate for his hyperlipidemia; and, contrary to the Defendant's claim, his medical records show that blood tests were conducted in October of 2023 and July of 2024. *2024 Med. Recs.* at 14; *2023 Med. Recs.* at 17-18. Second, for the same reasons, the Defendant has not plausibly pleaded he is suffering from a condition requiring care "that is not being provided." U.S.S.G. § 1B1.13(b)(1)(C). In fact, his medical records indicate the opposite to be true by evidencing the treatment of his diagnosed conditions. Third, there is nothing before the Court allowing it to conclude that Mr. Brichetto is "at risk of serious deterioration in health or death" based on a hypothetical absence of such "long-term or specialized care." *Id.*

Any one of these shortcomings would be dispositive and the Court thus concludes Mr. Brichetto has not shown an extraordinary and compelling reason pursuant to U.S.S.G. § 1B1.13(b)(1)(C).

### iv.    Other Reasons

Finally, Mr. Brichetto claims extraordinary and compelling reasons based on the "other reasons" provision of U.S.S.G. § 1B1.13(b)(5).  Specifically, he avers that (1) the Court's failure to address his mental health history at sentencing and on appeal, and (2) the consideration of acquitted conduct at sentencing provide him relief under section 1B1.13(b)(5).  Both aversions are without factual basis and the Court thus concludes they do not establish extraordinary and compelling reasons.

The first claim, that Judge Carter failed to consider the Defendant's mental health history at sentencing and on appeal, is inaccurate.  The presiding judge noted at sentencing that he had "carefully considered the contents of the written [revised] PSR," which detailed the Defendant's mental and emotional health, including his history of suicide attempts, depression, other diagnoses, and hospitalization.  *Gov't's Opp'n.* at 23 (citing *PSR* ¶ 50).  Finally, in imposing conditions for supervised release on Mr. Brichetto, Judge Carter expressly required Mr. Brichetto to "participate in a program of mental health treatment, as directed by the supervising officer, until such time as Defendant is released from the program by the supervising officer."  *J.* at 4.  Thus, the record reflects that Judge Carter did consider Mr. Brichetto's mental health history at his sentencing hearing; notwithstanding Mr. Brichetto's assertions to the contrary.

Mr. Brichetto's second claim is also without basis.  This Court and the First Circuit have each considered Mr. Brichetto's arguments regarding perceived misconduct at sentencing previously.  As this Court and the First Circuit have stated multiple times, the record does not support Mr. Brichetto's claim that the Court improperly considered acquitted conduct or referenced Count III.  *Gov't's Opp'n* at 24-25.  As noted, the First Circuit affirmed this Court's judgment after determining Mr. Brichetto's acquittal on Count III did not mean there was insufficient evidence for the guilty verdict on Counts I and II.  *Op. of USCA* at 3-4 (quoting *Alicea*, 205 F.3d at 484 (in turn citing, e.g., *Powell*, 469 U.S. at 66)).  To the contrary, the Court of Appeals concluded that "[t]here is more than sufficient evidence in the record . . . to allow a jury to find Brichetto guilty beyond a reasonable doubt on Counts One and Two."  *Id.* at 4.

In sum, the Court concludes Mr. Brichetto has not established an extraordinary and compelling reason for his early release.

### b.    Section 3553(a) Factors

The Court now turns to the § 3553(a) factors to evaluate whether Mr. Brichetto's sentence is "sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a)(2).  *Id.*

Beginning with Mr. Brichetto's history and characteristics, the Court recognizes that he has dealt with more than his fair share of difficulties.  After a fight with one of his brothers, his father threw him out of the house when he was sixteen years old.  *PSR* ¶ 48.  At that time, the Defendant lived with a high school friend.  *Id.*

Mr. Brichetto was an excellent athlete during high school and participated in winning several state championships in baseball and basketball. *Id.*

His criminal history is extensive, with the first documented offense occurring in 1986 when the Defendant was eighteen years old. *Id.* ¶ 25. The Defendant's criminal history involved multiple counts of criminal trespass, burglary, theft, aggravated criminal mischief, larceny, breaking and entering with intent to commit a felony, and perjury. *Id.* ¶¶ 25-34. The PSR calculated a criminal history score of twenty-one, and because he had five prior convictions for felony crimes of violence, he was deemed a Career Offender at sentencing. *Id.* ¶¶ 35-36 (citing *id.*, ¶¶ 28-29, 31, 33-34). The PSR documents that, "[w]ith the exception of a few periods of freedom, Mr. Brichetto has been incarcerated for a large part of the last 18 years." *Id.* ¶ 48.

The nature and circumstances of the offenses for which Mr. Brichetto is presently incarcerated are, in no unclear terms, appalling. The PSR establishes that in December of 2001, Mr. Brichetto obtained a gun from David Tanguay for the purposes of "mak[ing] a 'score.'" *Id.* ¶ 3. Mr. Brichetto, with Mr. Tanguay and two other individuals, discussed robbing a store and, after identifying Gorham Regional Federal Credit Union as their target of choice, returned to Mr. Tanguay's residence to obtain clothing, a bag, and some hats. *Id.* ¶ 5. Mr. Tanguay drove the group to the credit union and remained in the car while Mr. Brichetto and the two other individuals entered the credit union. *Id.* The PSR documents that, once inside, Mr. Brichetto pointed a small black handgun, which was loaded, at the only teller in the credit union. *Id.* ¶ 6. He ordered her to the floor and went behind the counter. *Id.*

The teller told police that Mr. Brichetto yelled at her and said, "I want all the money or I'm going to blow your head off!" *Id.* Mr. Brichetto also told the teller that he would blow her head off if there was dye in the money. *Id.* Mr. Brichetto proceeded to obtain $7,079 in cash and, along with the other two men, exited the credit union. As the group drove from Gorham to Portland, the handgun and its ammunition clip were thrown separately from the car into a swampy area on the side of the road. *Id.*

In addition to the financial loss of $7,079 claimed by the Gorham Regional Federal Credit Union, the teller reported a total loss of $2,837.67 resulting from time off from work, counseling sessions, and medications prescribed as a result of the trauma. *Id.* ¶ 7.

The instant offense does not stop there. In late February of 2002, two of Mr. Brichetto's brothers confronted Mr. Tanguay in Portland, accusing him of cooperating with the police in its investigation of the robbery. *Id.* ¶ 8. During this confrontation, one of the brothers called Mr. Brichetto and handed the phone to Mr. Tanguay; Mr. Brichetto threatened to kill Mr. Tanguay and his family if he told the police anything. *Id.* Mr. Brichetto claimed to be a few hours from "the border" at the time of this call. *Id.*

As noted, on January 5, 2004, a jury found Mr. Brichetto guilty of bank robbery and aiding and abetting bank robbery (Count I) and using, carrying, and brandishing a firearm during and in relation to the commission of a crime of violence (Count II). *Jury Verdict.* He was sentenced to a consecutive total of 384 months. *J.* The First Circuit affirmed Mr. Brichetto's sentence of incarceration on appeal. *Op. of USCA.*

The Court does not come to a different conclusion now. Mr. Brichetto committed an extremely serious crime, by its nature one that put the public in grave danger. He carried a loaded firearm into a federal credit union in Gorham, and brandished the same firearm at a teller, threatening to "blow [her] head off!" if she did not comply with his demands. Mr. Brichetto did not address the § 3553(a) factors in his motion, and the Court readily agrees with the Government that the factors do not favor the Defendant's requested early release.

Finally, as the Government's attachment reveals, Mr. Brichetto has had several sanctioned incidents over the last few years. Currently designated a medium risk for recidivism, to mention incidents over only the last four years, the BOP sanctioned Mr. Brichetto for testing positive for amphetamine in October 2023, for use of drugs/alcohol in June 2022, and for phone abuse in June 2021. *See Discipline Data* at 1. As Mr. Brichetto has had some difficulty complying with prison rules in a controlled setting, these incidents cause concern about whether Mr. Brichetto will be able to comply with society's rules upon release.

Both because Mr. Brichetto has not alleged an extraordinary and compelling reason for his release, and because the section 3553(a) factors do not lean towards his early release, the Court dismisses the Defendant's motion for compassionate release.

## IV.    CONCLUSION

The Court DISMISSES without prejudice Defendant's Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A) (ECF No. 190) and Motion to Reduce Sentence (ECF No. 191).

34

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 14th day of February, 2025